Good morning, Your Honors, my name is Amy Bellantoni, and I represent Alan Taveras and his appeal. This case was brought in the court below to strike as unconstitutional. New York City Administrative Code 10-303, Subsection A2 and Subsection A9, as well as three enumerated grounds for denying a rifle and shotgun permit in New York City under 38 RCNY 3-303, Subsections F, G, and N. Thirteen years ago, the Supreme Court held in D.C. v. Heller, they defined the scope of the Second Amendment, and they defined that scope as protecting the guaranteed right to possess and carry weapons for self-defense purposes. The discretionary licensing of rifles and shotguns in New York City essentially turns that right into a privilege by allowing a state employee to decide whether or not an individual has the right to exercise their guaranteed right to self-defense. New York City Administrative Code Subsections A2 and 9 are discretionary in that they allow a licensing officer or his designee to deny a rifle and shotgun permit for subjective factors such as moral character or for any good cause. Well, even Heller recognizes that people who are mentally ill shouldn't have guns, right? Heller recognized that there is a presumption that felons and the insane should not have firearms, but there are other cases in, for instance, the Seventh Circuit and in Second Amendment jurisprudence that even call into question whether felons lose the right and forfeit the right to possess firearms. Well, we'll get to that. I mean, that's the Seventh Circuit. That's Judge Barrett, then-Judge Barrett, who suggested that felons was both under and over-inclusive. But with respect to the insane, I mean, there is some subjective, I guess, component to whether somebody's insane, isn't there? There are enumerated factors under 28 U.S.C. 922g, I believe that would be subsection 9, that have already set a bright-line test for prohibitors. And those subsections in federal haven't, have not been addressed specifically by the Supreme Court yet. But even turning to New York State, New York State legislature has already enumerated factors that are prohibitors, bright-line factors, that are prohibitors to possession of rifle and shotgun. For instance, felony convictions. Well, I mean, you're suggesting that felony conviction is the only way that a criminal record can, or a criminal history of any kind, can affect the Second Amendment right to a firearm. Is that what you're saying? Absolutely not. No. New York State has enumerated certain misdemeanor offenses, which are classified as serious offenses. But a conviction is what you're saying is required. Exactly. But Judge Barrett didn't say that in Canter, right? I don't recall the specific analogy that Judge Canter went through in her dissent in that matter, Your Honor. But I will say that with regard to rifles and shotguns, New York City is the only jurisdiction throughout the whole state that requires a license. Anywhere else in the state, one can freely possess a rifle or a shotgun without having to seek permission from the government. So if somebody is charged with murder, awaiting trial, they should be able to get a rifle in New York City, in your view. What I'm saying is... Well, just answer that question. I believe there are mechanisms for an individual who has been indicted on a felony, I believe it's against the federal law under 22 U.S.C. 922, to possess a firearm of any type if you're under indictment. Well, I mean, is that, so is that a constitutional violation? I refrain from commenting on that, Your Honor, and I would just argue that for this specific circumstance, the discretionary factors have no place in determining, you know, whether someone has the right or not to possess a firearm. I guess we're at a point where my colleague is exploring what it means to say discretionary factors. If there were acts of violence, unlawful acts of violence, it's your position that you need either a formal charge or a conviction for those to weigh into the analysis of whether someone can possess a firearm? My position is that people are born with enumerated pre-existing rights, and unless and until those rights have been forfeited or they are disqualified from exercising those rights, which would be by, in the circumstances regarding criminality, which would be adjudicated by a conviction, until there is a conviction, they've not forfeited those rights. What about an order of protection, which is not obtained ex parte, but is obtained after hearing? Consistent with the Federal regulations, yes, if there is a hearing, then during the time that the order of protection is in place, because that person has had due process, they've had the opportunity to be heard, and the court has determined while the order of protection is in place that they are prohibited from possessing firearms. But if you have a series of arrests for violent encounters and a series of orders of protection that are ex parte and no convictions, isn't that sufficiently indicative of a danger that it would justify the police in withholding the license? I would disagree, Your Honor. Just because the argument that, for instance, where there's smoke, there's fire, does not hold when it comes to enumerated guaranteed constitutional rights. Everyone is entitled to due process. What if you had a jurisdiction in which the prosecutors decided that they're not going to indict for misdemeanors? For misdemeanor crimes of domestic violence? Yes. Well, it's still a Federal offense. The individual would still be prohibited under Federal law from possessing firearms based on a misdemeanor conviction involving domestic violence. Yes, but if the state prosecutors don't prosecute for misdemeanors, and increasingly that's the case around the country, then you would have people committing these offenses never being convicted and being entitled, under your analysis, to a license for a rifle. Well, the individual right cannot be set to the side by other individuals' actions. So the court in Heller has already rejected the interest-balancing public safety argument, which was Breyer's dissent in Heller. But in the Fourth Amendment context, for instance, clearly the people have a right to be free from unreasonable search and seizure, but if an alleged victim who's named comes forward to the police and says, I was violently assaulted by this individual, and particularly if there's corroboration, I was treated at the hospital for those injuries, that would constitute probable cause, and we would say it would be reasonable to seize the person named by the alleged victim. Not certain, but reliable enough for that intrusion. What about the Second Amendment makes it impossible to say, here, there was an arrest on the basis of, again, a named victim who said she had been assaulted by this individual who was treated for her injuries? There doesn't appear to be any disagreement about that. Why isn't that sufficient reliable evidence to act in this licensing regime? Well, Mr. Tavares never had the opportunity to face his accuser, which is what he would have the opportunity to do. There is an end game, or an end result, or a goal, when it comes to Fourth Amendment seizures in a criminal context. There is ultimately a suppression hearing, and ultimately you're able to face your accuser and have a jury, and have a trial, and have representation. The Fourth Amendment is a restriction on the government and what the government can and can't do in infringing upon your person and your effects and your home. The First and Second Amendment declare the rights of the individual. They don't set a restriction on the government, so they're, in that respect, totally different from the Fourth Amendment context, and the Second Amendment says that that right shall not be infringed. Now, there are bright-line factors, as the Court is aware, statutorily, and even the New York State Legislature, under the SAFE Act, when they amended the SAFE Act of 2013, did not seek to enumerate a misdemeanor crime of domestic violence as a serious offense, but in fact created an E, I think it's an E felony, I'm not sure if it's a violent felony or not, for a second offense. So if there was a second offense, then that would be a bright-line prohibitor. Is it fair for the state or for city agencies or for municipalities to consider that there's a considerable difference between the dangerousness of the same person living in downtown Brooklyn, for example, or in the wastelands of Vermont? One's individual rights. It's all one standard. Excuse me, I'm sorry. It's all one standard. It's the same standard. It's I, as an individual, have a right, and it's attached to me, and wherever I go, it's attached to me. I have the right to defend myself. I have the right to use weapons in common use for self-defense under Caetano v. Massachusetts, the Supreme Court said. So wherever I go, I have the right to defend myself. Now, there are certain sensitive areas that have been declared by certain laws, federal and state, such as schools and government buildings, where I know that if I go there, I don't have a restricted right. I don't have the right to carry weapons there. But leaving those sensitive areas aside, it's attached to the individual, and unless and until that individual does something that warrants the forfeiture of that right, or if they have a condition, for instance, a mental illness that's documented, for example, by an involuntary commitment, then that right is forfeited and or is a disqualification temporarily or otherwise. But what's your basis for saying it's only a conviction? I guess that's the point. I mean, we're all agreeing that there are certain people who are outside of the core group that are covered by the Second Amendment, and the insane would be one group. Convicted felons, you seem to agree, would be another. Why not people who are dangerous? Because the danger hasn't been proven. Anyone can make an allegation. Well, that's sort of a due process problem, but you're not making a due process argument at this point, are you? Well, I believe there's a due process argument in the papers, but I'll rest on my papers with respect to that. But with regard to the Second Amendment, there's no longstanding historical basis or acknowledgment that a mere arrest in and of itself qualifies as something that should disqualify an individual from exercising a constitutional right. Sure. I mean, that may be. It may be that dangerous is not proven simply by an arrest, but you're asking, I think, for more, aren't you? You're saying that an arrest can never be enough, aren't you? I'm saying an arrest can never be enough. Okay. Or mere allegations, because there was an arrest here, and there were also mere allegations in a police report where, notably, the second officer, the one who took that police incident report, decided not to move forward or press charges, and I guess there was a credibility issue there with the complainant. What about dismissal in contemplation, so that if you don't commit another crime, this will be dismissed? You're not really convicted, are you? There is no conviction within a German in contemplation of dismissal, and as a former prosecutor, there are many reasons why an individual would choose to, and a defense attorney as well, many reasons why an individual would choose to either plead to a disorderly conduct, which is also a non-prohibiting, non-criminal violation, as well as an ACD. Money is one huge factor, especially with regard to lower socioeconomic classes. They'll pay a fine, and then they'll plead guilty to a disorderly conduct and move on, even though they didn't commit the offense that was alleged against them. There are no allegations like that in this complaint. I mean, there's a conclusory denial that the alleged incident of violence took place, but your client could have pled more, I guess, in the complaint as to why the evidence of the arrest was unreliable. He flatly denies any allegations that were made by his ex-girlfriends, and notably, that's not an uncommon circumstance where you either have marital issues with a pending divorce where people are using the criminal justice system to gain an advantage, or ex-girlfriends or boyfriends. I'm just pointing out, it's distinct from Henry. In Henry, the people that had made allegations of domestic violence supported the application for the license, and there was more of an explanation as to the past incidents. So to that point, Your Honor, this was a total B6 motion. We never even had the opportunity to have discovery or depositions or move forward in any respect, so possibly that information could have come out during discovery. But I'm trying to nail down where you're going. So are you saying that there needs to be basically a hearing any time a license is denied unless there's a conviction or unless a person has been, I guess, demonstrated to be insane by virtue of court order committing them? No, Your Honor. I'm saying that power, that authority, and the discretionary scheme that we have here, which gives the authority at this point to the licensing officer, should be completely removed from the circumstances. So a finding of dangerousness is constitutionally infirm. That's not a condition that can be put on gun possession or licensure. But there's no finding of dangerousness here. Okay, but there could be. You could have a hearing at which witnesses come in and say, this is what he did to me, and somebody determines by a preponderance of the evidence that that's what happened, so a probable cause. Are you asking for that? No, I'm not saying that should absolutely not be. No, I'm saying that if there's not a bright line conviction that is, in fact, a prohibiting conviction, that the individual has not lost their Second Amendment rights and should not be barred from... But what's the basis for your bright line test to the Second Amendment? Unless there's a bright line, it can't be imposed as a restriction. Because if we look at the longstanding history in Second Amendment jurisprudence and throughout the states as well, back in the founding era, as well as the Congress, who has set out laws under 28 U.S.C. 922, as well as the New York State legislature, which has heard evidence... But you just told me three times, you've told us three times that Congress has a statute that says a person accused of certain crimes can't own a firearm. And so aren't you really saying that that's unconstitutional? That's not being challenged here. I know that, but that's kind of a cop-out, right? I would say that it is. I would say that that would be as well. If someone's just under indictment, it's very easy to indict someone, and it doesn't necessarily mean they're convicted. But they shouldn't, you know, have that right taken away. As opposed to the order of protection, which is a temporary restriction on the right to possess firearms after a hearing, there's a temporary order of protection. And then when that order is vacated, the individual has the right to back up. Suppose the order is obtained ex parte, but it is not challenged by the person against whom it is issued. Well, that would be up to the family court or the criminal court judge under the whatever the allegations are. But again, I would say that if there hasn't been a hearing, then... Are you saying that if the individual doesn't challenge it and spurts the hearing, that they can still... I'm not saying anything. I'm just wondering if that was your scenario. That's the thrust of it. Because, you know, in this case, it is only an order of protection. It's only an arrest. There's no conviction. But the victim was in the hospital for a period of time. So there's inferences that are easily drawn here. I don't know. And I'll admit, I don't know what length of time there was. I believe it was just an emergency room visit. I'm not sure there was a lengthy stay. But I don't even know that that was as a result of anything that my client did. There's been no adjudication of that. And he flatly denies having hurt this woman. So with respect to the order of protection, if there has been a hearing, and that's a then that's on the books right now. And that is a bright line test. It's not being challenged specifically here. Well, it would seem that an existing arrest would also at least have a speedy trial component. I'm not talking about a past arrest that's been dismissed, but a pending arrest. I mean, arrests with pending charges. You've said that's not a basis on which to deny a gun. But why is it any different than an order of protection? An arrest is an allegation. There is no judicial... Sure there is. An arrest will be finding a probable cause, right? By a police officer, by someone who goes and makes a complaint. There's nothing tested about an arrest. It's a mere allegation. And it would be, I can think of maybe one jurisdiction, that being California, possibly New Jersey, not sure. I didn't look through all of them, but it would be highly irregular to find that an arrest in and of itself constitutes a basis to deny someone their constitutional rights. I know California does not rule... Well, within 48 hours of an arrest that's made without a warrant, doesn't a judicial officer have to examine the facts and determine that based on the government's allegations there's probable cause? So there is a judicially sanctioned probable cause determination. That may not be enough to infringe on Second Amendment rights, but there is some judicial determination of probable cause in connection with an arrest, either before the arrest warrant issues or soon after the arrest. If there is a warrant involved, there would be some factor of probable cause. But again, I would disagree that that constitutes a basis to deny, to forfeit someone's right to protect themselves, that the core right is self-defense. So we're essentially saying, whether it's firearms or not, an individual has no right to defend themselves as any other regular person has to defend themselves based on a mere allegation, and that is unconstitutional. And what if a person has made threats? What if a person says to the licensing official, and I'm going to use this to take out my charge, there's no indictment, there's no conviction, but the licensing official can't consider that, in your view? The licensing officers should have no discretion with regard to whether or not an individual has the right to self-defense with a common weapon. Even if they announce they intend to use it for an offensive purpose that would harm others. Or if he says, I intend to kill myself, I need a gun so I can kill myself. Okay, well, under those circumstances, they would potentially be red-flagged, and there are red-flagged laws on the books now in New York, and they would be subject to a report, either under Mental Hygiene Law 9.46, or an emergency, especially in New York City. The licensing officers are police officers, they're in a police department, and they would be able, at that point in time, to take the individual into their custody under Mental Hygiene Law 9.39, and have them evaluated at a mental health facility. Or deny the license on the theory that the person is not seeking the gun for self-defense, which is the constitutional right. There is a point to that, but more importantly, they would not be making the determination which they often do, of someone's mental health status. It's not, they're not doctors, it's not their forte, it's not their authority. It's not within the scope of their discretion. Yes, but if somebody said, I want a gun so I can take out my fellow employees, that is not a person seeking a gun for the constitutionally sanctioned purpose. That would not be self-defense. But there would also be protections, because that individual would be subject to a mental hygiene report and evaluation by mental health professionals. And also, an individual who has been subject to an evaluation and involuntarily committed is now prohibited, and is now in the Department of Criminal Justice, Division of Criminal Justice Services database, and the Safe Act database in Albany, and they would be prohibited from either possessing or trying to purchase a firearm. So that is another safety aspect, procedural safety aspect. Ms. D'Antonio, let me ask you one other question, a little different. In a month, the Supreme Court's going to be hearing a different Second Amendment case involving New York State provisions. Is there any reason why we might consider waiting for the Supreme Court to weigh in on this before deciding this case? No, Your Honor. There's no reason to wait for the case that's going to be heard before the Supreme Court. That case is specifically with regard to handguns, and more specifically with regard to the proper pause requirements for carrying handguns. New York City is an anomaly in that, again, outside of the city, handguns are licensed, and they're subject to the same discretionary regulations that rifleman shotguns are subject to. No, I understand that. My thought was that it might have an effect on the current state of the Second Circuit case law on things like the level of scrutiny to be applied, and the process. We have the sort of two-step process that we've formulated in our case law, but you don't think it's worth waiting? I don't think it's worth waiting. I mean, it would be very instructional for the Supreme Court to reiterate, as Justice Thomas did in his dissent in Rogers v. Brewell, with regard to what the proper scrutiny is for all Second Amendment challenges. But I would say even here, when discretion is brought into the picture, there's no level of scrutiny that such a licensing scheme could survive, because it's not up to another individual's discretion of whether someone has the right to defend themselves or not defend themselves. You've reserved some rebuttal time. Thank you so much. May it please the Court. Zach Shapiro for the Attlees. As an initial matter, Tavares' facial challenge fails under admitted circumstances where these licensing provisions could constitutionally apply. I heard opposing counsel to admit that if there were domestic violence that had resulted in a conviction, that would be a set of circumstances where the license division could deny the license under these provisions, and that alone defeats the facial challenge. As for the as-applied challenge, as some of Your Honor's questions suggested, licensing officials should have some flexibility to consider evidence of domestic violence and dangerousness other than purely a conviction. But the reg does more than that, right? I mean, it just says arrest, any arrest. It could be a 30-year-old arrest for shoplifting, right? Well, the reg says history of domestic violence. It's not specific to an arrest, but just last year in the Libertarian Party, this Court upheld a license official's reliance on a series of arrests. And in that case, there wasn't even any allegation that those arrests involved violent conduct. Here we have a serious incident where Tavares punched his ex-girlfriend in the face. No, but before, I'm just looking at the language of the rule. And the rule talks about where an applicant has been arrested, indicted, or convicted of a crime except minor traffic violations. That's enough to deny— I believe that's in Admin Code 10-303-A1, which is not at issue here. What we're looking at here is A2 and 9, which are the good moral character and good cause provisions, which are identical to the provisions that this Court upheld under New York law in the Libertarian Party. And then to further constrain the discretion in how the licensing officials apply those, the—they've set out 38 RCNY 3-03, the relevant provisions here are F, G, and A. Just making sure I understand how the regulation works, 303 sets forth factors that the licensing official can consider, right? Right. Or I guess it says, the determination shall be made based upon consideration of the following factors. So you could read that as must consider. Right, but the—under the Administrative Code, the default is to grant the license as the District Court recognized at page 119 of the appendix. And these are merely factors that the licensing division considers in making that determination. And one of those factors has been arrested, indicted, or convicted. That's right, but that specific provision is not at issue here. It wasn't cited by the license division. What they relied on were F and G. And G is a history of one or more incidents of domestic violence. But in this case, didn't the licensing officer of necessity look at the fact of the arrest? I mean, that's all he had, right? Right. The arrest is certainly relevant, as it was in the Libertarian Party. But the reason why he relied on that arrest is because it was focused on an incident of domestic violence where Tavares punched his ex-girlfriend in the eye, sent her to the hospital. There's no dispute that she had to seek hospital treatment. It was serious enough that she went to the police, that they made an arrest, that there was an order of protection issued. So there is a—there's maybe no dispute that she received hospital care for an assault. There is a dispute as to who the perpetrator was, right? She reported to the police some years ago that she'd been assaulted by the plaintiff. But he says in the complaint that was a false allegation. Right. So doesn't that mean that the infringement here is essentially based on a probable cause? I don't think that's exactly right. I mean, I don't think it's sufficient just to deny that the incident happened without any explanation of how she ended up in the hospital with the black eye. In fact, under the Supreme Court's opinion in the United States v. Beam, the court explained that executive officials, like the licensing officials here, are much better equipped than the courts to make an investigation into a person's background and ability to— Well, what investigation took place here other than the fact of an arrest? I'm sorry? What investigation took place here other than the fact of the arrest and the order of protection? Right. So the license division is required to check the person's criminal history, to check their mental health, if there's any evidence of— Okay. But in this case, we've got a criminal history. That's what we have, right? And we have the—that Tavares himself submitted documents that merely deny that the incident occurred. So, I mean, it's drastically different, for example, from the Henry case, where you have the alleged domestic victims themselves submitting affidavits in support of the application. The license division considered the evidence that he had engaged in this conduct. They considered his denial of that conduct, and they made a determination based on the evidence that they had. I don't think this court should second-guess that determination merely because he denies that it occurred. Henry spoke of reasonable inferences based on substantial evidence, and we would submit that the evidence here is substantial. What we have is— But that's sort of a blanket rule, though, right? An arrest for a domestic violence is going to bar you from having a handgun. Every time, right? Not necessarily, Your Honor. It's a serious factor to consider, but the discretion, which opposing counsel complains so much of, enables the division to say, well, that is an important factor, but these other factors outweigh it. In fact, they weighed the time that had elapsed since the incident in his favor. It's now been three additional years. I can't say that they wouldn't reach a different conclusion had he submitted it now. But what we have here is we have the arrest. We have significant social science research showing that domestic violence rarely results in a conviction, that abusers recidivate at significant rates. And that's— How is that social science—how is that in the record at all at this point? This was a motion to dismiss. Right, and the Court could take judicial notice of it. Of social science data? Of these particular findings that have been relied on in judicial opinion after judicial opinion. I would direct Your Honor to the Sixth Circuit's opinion in Stimel v. Sessions, which was also on a 12b6 motion, and the Court considered this evidence. And the evidence was— And it can't be rebutted? It can be rebutted. They've made no attempt to do so. They don't even deny any of these findings. And these are well documented. I'm not aware of any— So if they had attempted to rebut it, then this would have been inappropriate for a 12b6 motion to dismiss, and then it should have gone to discovery and summary judgment? If—I would think it would depend on exactly what they say and what they point to to rebut it. But these are well documented findings, and there's been no dispute about them. And to the issue of an arrest, the science shows that individuals like Tavares who have what's supposed to be one prior arrest are even more likely to recidivate than the already high rate at which other domestic abusers recidivate. One study discussed in the National Institute of Justice report found that they were seven times more likely to recidivate, that the severity of the conduct increases over time, that the presence of a gun is—drastically increases the likelihood of a fatality, not only of the domestic victims, but also of police officers who are responding to domestic disturbance calls. As a matter of information, who constitutes the internal appeal system? And what are their qualifications? Are they also police? Yes, they are a member of the police department. They hear all of—it's one office that hears all of the appeals. Is there an appellate panel? Is it heard by one policeman or by two or three or eight or what? It's attributed to the director of the office. There is an office staff that handles them. But they hear all of these cases. Who's they? I mean, is it one— I don't know exactly how many people are in the office. I mean, in each individual case, on this case, it looks like there was a single person who was the director of the license division. Yes. So the appeal can, or in this instance did, consist of a single policeman. That's right. But it's an office that, as I said, is much better equipped than this court to conduct an investigation into a person's background. That's what the Supreme Court has said. That's what the Sixth Circuit said in the demo. So the appellate office is better equipped to conduct an investigation? Well, it's an office of the NYPD. That's what the NYPD does. They conduct investigations. These are all police officers. Nancy? Well, here, going back to whether there's enough of a showing of reliable evidence here, if we're applying the Henry framework for a moment. So there's an allegation of a domestic assault that he denies. He also, in his complaint, says, I've had no problem with law enforcement. I know you point to social science evidence, but the allegations regarding this plaintiff, no involvement with law enforcement since 2011. So there's been a lengthy period since that single arrest. What is it when you point to what he failed to do? What else could he, do you want him to say to support his side of this investigation? Other than that, I was arrested, I didn't do it, and nothing has happened, no other law enforcement involvement since 2011. Well, in Henry, the applicant submitted affidavits from the victim saying, in support of the application, if he wants to dispute it, I think he has to say something more about how she ended up in the hospital than simply, I didn't do it. As to the six years from when the incidents occurred until he submitted this application, that pales in comparison to some of the other periods that applicants have argued. For example, in the Fourth Circuit's decision this year in Harley, there was a 27-year time period between the act of domestic violence and the application, and the court said, well, that's not enough. There's no evidence that the likelihood of recidivism has reduced over time, and the government is allowed to apply it in that circumstance, all the more so when we're talking about just six years in this case. But recidivism usually explains when people who have committed crimes then commit later crimes. He's disputing that he ever committed a crime, so he'd be saying that the data about recidivism doesn't even apply to me, I didn't commit a crime, and there's been no finding that he did, right? What we have is an arrest, and the license division considered his evidence that he didn't do it against the evidence that he did do it. So he's got to prove that he didn't do it, is what you're saying, right? Not necessarily. As I've said, there are other factors that the license division considers. Okay, but he presumably said he didn't do it. Right. And the charges were dismissed, right? He didn't have a chance even to have his day in court. The charges were dismissed by the government authorities, correct? That's right. But the concern here, specifically about domestic violence, is that it rarely results in a conviction, and yet domestic abusers recidivate at significant rates, and yet their evidence was that he did recidivate. People accused of having committed domestic violence commit later acts of domestic violence, is what you mean, right? Well, the science relies, among other things, on arrest recidivism, on surveys of victims about their experience over time. I don't know that there's reason to question that something's going on there, especially given the frequency at which victims don't even report it to police. As in this case, the conduct is so serious that they go to the police, that it results in an arrest, that he then violates an order of protection with subsequent conduct. We submit that that's sufficient basis for the license division to make a determination. It might make a different determination. The whole point of the discretionary factors is to enable it to more narrowly tailor the circumstances in which they deny individuals licenses and permits. But we do submit that there was sufficient evidence here, given specifically the concerns about domestic violence, particularly in light of this court's decision last year, a libertarian party, that the division can consider are evidence for arrests. If your honors have no further questions. Well, let me ask the same question I asked your adversary. So the Supreme Court's going to be hearing a different case involving a different statute or provision, but involving Second Circuit precedent. Is there any advantage to waiting for the Supreme Court to clarify, perhaps, what is the proper approach to the level of scrutiny or other things that we've done in our case law? Well, I do think this is actually a point of agreement. With opposing counsel, as she explained, the issue in the Bruin case is about the proper cause standard for concealed carry, which is a higher standard applicants have to satisfy. So there's no particular reason to think that the court's decision will affect this case. And I don't think this court should hold all of its Second Amendment cases for who knows how many months until the Supreme Court issues its decision. Certainly didn't think that was enough. If there are no further questions, we ask the court to affirm. Thank you. These circumstances cannot be compared to the Libertarian Party case, because that Libertarian Party case dealt with handguns, which are licensed and have been licensed since 1911, and do have the moral character and good cause provisions in them and are completely discretionary. Throughout New York State, the problem with New York City is that there's basically no rights, recognized rights, to possess any firearms, handgun, rifle, or shotgun under the Second Amendment, because rifles and shotguns are subject to the same discretionary scheme. It's basically a photocopy of the section 400 of the penal law. So everything is discretionary, and therefore nothing is a right. It's all a privilege. So Libertarian Party is not applicable. All of the cases that are cited by counsel in his brief deal with convictions. None of them deal with mere arrests or mere allegations. All convictions for whether felony or misdemeanor conviction, where the courts held that the constitutional rights have not been violated. Additionally, you run into the de Castro problem, because again, in New York City, because everything is discretionary with regard to handguns, rifles, and shotguns, there are no alternative means for non-prohibited people, like Mr. Tavares, to acquire a firearm for self-defense. And again, this is self-defense in his home. Heller has already put to bed the issue of self-defense in the home. And Mr. Tavares has no prohibitors. So he should not be deprived of the right to have a rifle or a shotgun, or a handgun for that matter, in his home. I would also mention that the city has not presented any evidence with regard to their public policy and recidivism rates. Where is it parsing out individuals who lawfully possess firearms, and then use those firearms to commit an offense? These are all a lot of numbers and a lot of studies, but no one's really parsing out individuals who are non-prohibited, who are lawfully possessing firearms, and at what rate are they suddenly committing a crime, as opposed to protecting themselves and their families from criminals? It's unconstitutional to take that right away from non-prohibited people in the same manner that it's taken away from a criminal. Well, let me ask you a question to respond to Mr. Shapiro's point about the studies on recidivism for folks arrested of domestic violence. He's saying that the district court could take public notice of that, that those are studies that have been relied on in other courts, and so therefore they're free to be considered. Did you attempt to bring in other studies or challenge those studies in any way? I did not in this case, because we're at the 12B6 stage, and if I need to get experts to come in and counter that information, that's fine. But I would also just tell the court and remind the court that Heller already affirmatively rejected the public interest, balancing test when it comes to Second Amendment rights. That was the dissent, Justice Breyer's argument in the dissent, and it was affirmatively rejected, and that's why I'm not responding to these public policy arguments, because the Supreme Court has already ruled that they do not factor into this consideration. And also, Mr. Tavares has had no arrests since then, which, so really, there's no bearing on this case as to what recidivism rates are. He's not convicted of any domestic violence matters. He hasn't been arrested since then, and he didn't commit this offense in the first instance, so he should not be prohibited from exercising his Second Amendment rights, and neither should anyone else in his position. And I ask that the district court opinion be reversed. Thank you. Thank you both. Very well argued, and we'll take the matter under advisement.